UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL KERBER AND SHEILA KERBER,

               Plaintiffs,

v.

WAYNE COUNTY EMPLOYEES
RETIREMENT SYSTEM, ET AL.,

               Defendants.

_____/

Case No. 18-12049

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION [6]; GRANTING DEFENDANT WAYNE COUNTY PROSECUTOR'S OFFICE MOTION TO DISMISS [24]; GRANTING IN PART AND DENYING IN PART DEFENDANT WAYNE COUNTY EMPLOYEES RETIREMENT COMMISSION'S MOTION TO DISMISS AND KELLY TAPPER'S MOTION TO DISMISS [22, 28]; AND DENYING AS MOOT PLAINTIFFS' MOTION TO STAY [29]**

Mr. Kerber and his wife bring this suit under 42 U.S.C. § 1983 and Michigan common law. Mr. Kerber's pension was suspended in 2015 after he was accused of defrauding the pension system. He was criminally charged, and ultimately acquitted, of a range of crimes stemming from these allegations. Plaintiffs sued Mr. Kerber's former employer, his retirement system, and the prosecutor's office. Following the Court's dismissal of Plaintiffs' case against Mr. Kerber's employer, two groups of defendants remain in the suit. The first is the Wayne County Employees Retirement System ("WCERS"), its Director Robert Grden, and its former Division Director Kelly Tapper. The second is the Wayne County Prosecutor's Office ("WCPO"),

Wayne County Prosecutor Kim Worthy, Assistant Prosecuting Attorney Ronald Donaldson, and Detective Anthony Domek. Plaintiffs seek to restore Mr. Kerber's pension payments and obtain declaratory, injunctive, and monetary relief. The defendants have all filed motions to dismiss.

## FACTUAL BACKGROUND

During his long career with Wayne County, Plaintiff switched between three retirement Plans: Plan One, Plan Four and Plan Five. Plan One was a defined benefit plan; Plan Four was a defined contribution plan; and Plan Five was a hybrid plan combining a defined benefit component with a defined contribution component. In September 2005, Plaintiff applied to transfer from Plan Four to Plan Five, and he remained in Plan Five until his retirement in 2009. (Am. Compl. ¶¶ 20-21). As part of Mr. Kerber's severance agreement with the Wayne County Airport Authority ("WCAA"), he was permitted to re-enter and retire from Plan One instead of Plan Five. (Id. ¶ 22). In addition to the transfer of his defined benefit assets from Plan One to Plan Five, the severance agreement also provided that, "the authority agrees to allow Employee to transfer his Plan Five defined contribution pension assets to Plan One, and elect Plan One as his retirement plan." (Dkt. 39-1).

As part of this transfer, $475,000 of defined benefit assets were transferred by WCERS from Mr. Kerber's Plan Five account to his Plan One account. (Am. Compl. ¶ 24). On July 24, 2009, the CEO of the WCAA, Lester Robinson, sent a letter to

the director of WCERS, Ronald Yee, "allowing" Mr. Kerber to transfer all of his Plan Five defined contribution assets to Plan One and to retire under Plan One. (Dkt. 39-4). For reasons that remain unclear, however, Mr. Kerber's defined contribution assets were not transferred. Several years later, upon cross-examination in Mr. Kerber's criminal preliminary examination, Defendant Kelly Tapper acknowledged that WCERS transferred the defined benefit funds from Plan Five to Plan One (a "reserved transfer"), but that it was the employee's responsibility to fill out paperwork and sign to transfer funds, but that such paperwork was not present in Mr. Kerber's file. (Id. at ¶¶ 76-80). Ms. Tapper stated that it would have been impossible to transfer Plan Five defined contribution funds into a Plan One defined benefit account (Id. at ¶¶ 80-81).

Upon his September 1, 2009 retirement, Mr. Kerber began receiving monthly pension payments of $11,337.48 from Plan One. (Am. Compl. ¶¶ 21-24). This was considerably higher than the $6,056.38 that he would have received monthly had he remained in Plan Five. Nevertheless, $270,000 remained in Mr. Kerber's Plan Five defined contribution account, which was administered by Prudential. (Id. ¶ 26). Plaintiff continued to receive account statements on his Plan Five defined contribution account up until April 2011. (Id. at ¶ 27; Dkt. 39-4).

In April 2011 Plaintiff contacted Prudential and asked for his defined contribution funds to be distributed to him. (Compl. ¶ 28; Dkt. 39-4)). On May 2,

2011 Prudential received approval from WCERS and issued a check in the amount of 277,431.40: the $340,166.01 in the account less taxes. (Am. Compl. ¶ 30; Dkt. 39-4).

In January 2015, following a tip from WCAA CFO Terence Teifer, WCERS Director Defendant Robert Grden directed WCERS Defendant Kelly Tapper to conduct a review of Mr. Kerber's file. (Am. Compl. ¶ 31). Ms. Tapper reported to Defendant Grden that the distribution of the defined contribution funds violated the terms of the severance agreement (Id. ¶ 34). According to Plaintiff, Defendant Grden then referred the matter to the WCPO. (Id. ¶ 35). On May 21, 2015, Kelly Tapper wrote a letter to the WCPO outlining the facts above and concluding, "I wish to prosecute this matter on behalf of the Wayne County Employees Retirement System." (Dkt. 24-2).

In July 2015, shortly after a conversation with Defendant Det. Anthony Domek, Defendant Tapper caused WCERS to discontinue Mr. Kerber's pension payments. (Am. Compl. at ¶¶ 50-51). Detective Domek then interviewed eight officials at the WCAA and WCERS. (Dkt. 24-6). According to his report, the former executive director of WCERS, Ronald Yee, told Domek that he interpreted the severance agreement to require Plaintiff to transfer his Plan Five defined contribution monies into WCERS's defined benefit account. (Id. at ¶ 54-55). Mr. Yee blamed employee Delano Davis for failing to complete the transfer and noted

that he was suspended for "failing to complete several such transfers." (Am. Compl. ¶ 57-58; Dkt. 24-6). Det. Domek failed to reach Mr. Davis, however. (Am. Compl. ¶ 59; Dkt. 24-6). Based on these interviews, Det. Domek issued an investigative report to the WCPO. (Dkt. 24-6). APA Donaldson requested a warrant for Mr. Kerber's arrest on charges of Larceny by Conversion-20,000 or more and False Pretenses-100,000 or more. (Am. Compl. ¶ 70; Dkt. 24-7). A warrant was issued for Mr. Kerber's arrest on October 27, 2015, and he self-surrendered shortly thereafter. (Am. Compl. ¶ 69).

On December 9, 2015 and June 6, 2016, Wayne County Prosecutor Kim Worthy issued statements to the news media accusing Mr. Kerber of fraud. (Am. Compl. ¶ 71). Prosecutors brought two cases against Mr. Kerber over the course of the next three years. Both were unsuccessful. First, prosecutors charged Mr. Kerber with the crimes of false pretenses or larceny by conversion. *People v. Kerber*, 2017 Mich. App. Lexis 710, *2-3 (Mich. Ct. App. Apr. 27, 2017). The state district court dismissed the charge of larceny by conversion, but bound Mr. Kerber over on the false pretenses charge. *Id*. The state circuit court denied Mr. Kerber's motion to quash and reinstated the larceny by conversion charge. *Id*. (citing Wayne County Circuit Court. LC NO. 16-001781-01-FH). The Michigan Court of Appeals granted Mr. Kerber leave to appeal. On appeal, the prosecution argued for the first time that though Mr. Kerber could not be criminally liable for emptying his defined

contribution account, he could be criminally liable for accepting the defined benefit pension payments made by WCERS. *Id.* at *3-4. The Court of Appeals refused to consider this newly raised argument, and remanded the case to the circuit court with instructions to dismiss the charges. *Id.* at *5

Following this dismissal, Mr. Kerber was charged with six counts of larceny by conversion and five alternative counts of larceny, under the theory that he embezzled his monthly pension payments. The district court bound Mr. Kerber over on all the charges, and the circuit court denied his motion to quash the bindover. Wayne County Circuit Court. LC No. 17-006319-01-FH. The Michigan Court of Appeals then heard the case on the merits and ruled that since WCERS did not retain title over the monthly pension payments made to Mr. Kerber, the elements of larceny by conversion were not met. *People v. Kerber*, 2018 Mich. App. LEXIS 2347, *6-10 (Mich. Ct. App. May 15, 2018) ("Despite the extensive briefing by the parties, the resolution of this case is very simple…a person cannot convert his own property."). The Court also held that since WCERS voluntarily paid Mr. Kerber his monthly pension benefits, the larceny charges were unfounded. *Id.* at *12-18. It refused to consider the prosecutor's arguments that a mistaken transfer of funds could not be consensual, because the record contained no evidence explaining "why the Retirement System made the monthly pension payments to defendant without having first received defendant's Plan 5 defined contribution funds." *Id.* at *18.

Again, the case was remanded for dismissal of the charges. *Id*. at *20. The Supreme Court of Michigan denied the People's application for leave to appeal on October 2, 2018. *People v. Kerber*, 2018 Mich. LEXIS 1947. (Mich. 2018).

<h3 style="text-align:center">PROCEDURAL BACKGROUND</h3>

Plaintiffs brought suit on June 29, 2018. [Dkt. # 1]. They amended their complaint on August 2, 2018, and on August 2, 2018 filed a motion for an order for show cause why Mr. Kerber's pension benefits should not be restored, which is actually a motion for a preliminary injunction [6]. On September 5, 2018, the WCERS Defendants and the WCPO Defendants filed their respective Motions to Dismiss [22 & 24]. Kelly Tapper filed a Motion to Dismiss on September 19, 2019 [28], and, because her motion relies on WCERS's motion, the Court will refer to her motion jointly with that of the WCERS Defendants. WCAA filed a Motion to Dismiss on September 26, 2018 [30], and the Court granted that motion on February 12, 2019 [47].

The criminal case against Mr. Kerber had not definitively concluded when Defendants filed their motions. All the defendants therefore included in their motions to dismiss a component seeking dismissal on the basis of the Younger Abstention Doctrine, which precludes a federal district court from hearing a case arising out of a prosecution that is still pending in state criminal court. *See Younger v. Harris*, 401 U.S. 37 (1971). To avoid this doctrine, Plaintiffs filed an Emergency

Motion to Stay Proceedings pending a Decision by the Michigan Supreme Court [29]. The Supreme Court of Michigan denied the application for leave to appeal on October 2, 2018, mooting this motion and the Younger Abstention Doctrine components of the motions to dismiss. The WCERS and WCPO motions are otherwise fully briefed, and a hearing was held on February 5, 2019.

### PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [6]

Plaintiffs seek a preliminary injunction restoring his pension. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The Court need not evaluate the first prong of the analysis—likelihood of success on the merits—because the Plaintiffs cannot make any showing as to the other three prongs.

Because Mr. Kerber's pension is purely monetary, Plaintiffs have not plead that irreparable harm is likely. The fact that an individual may lose his income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages in the form of back pay. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 579, (6th Cir. 2002) (citing *Sampson v. Murray*, 415 U.S. 61, 90, 39 L. Ed. 2d 166, 94 S. Ct. 937 (1974) (finding that "the temporary loss of income, ultimately to be recovered, does

not usually constitute irreparable injury.")). Plaintiffs' harm is not irreparable, for if they prevail they can recover the money owed with interest. This analysis might be different if Plaintiffs feared imminent bankruptcy, but there is no indication of such pressing financial straits.[1]

Plaintiffs have failed to tip the balance of equities in their favor. If they are right, they will be made whole. But if they are wrong, it may be very difficult for the Defendants to recover money wrongly paid to Plaintiffs. Moreover, there is no public benefit to restoring a private pension. Even without parsing the likelihood of success on the merits, the Court can determine that a preliminary injunction is not warranted in this case.

## STANDARDS OF REVIEW FOR THE MOTIONS TO DISMISS

WCERS moves to dismiss for lack of subject matters pursuant to FED. R. CIV. P. 12(b)(1). A challenge to subject matter jurisdiction takes the form of a facial attack or a factual attack. WCERS makes a factual attack, which means that it challenges "the factual existence of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). Accordingly, Plaintiffs' factual allegations do not get the benefit of the presumption of truthfulness, and the Court may "weigh the

---

[1] Further, Mr. Kerber's pension has been at least partially restored, albeit at a fraction of its previous level.

evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

WCPO moves to dismiss the amended complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). On such a motion to dismiss, the Court must "construe the complaint in a light most favorable" to Plaintiff and "accept all of [its] factual allegations as true." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). "Although the factual allegations in a complaint need not be detailed, they 'must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.'" *Id. quoting LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive such a motion, Plaintiff must plead factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## ANALYSIS

### I.    Wayne County Employees Retirement System's (WCERS') Motion to Dismiss

Plaintiffs argue that the Wayne County Employees Retirement System deprived them of their due process rights in Mr. Kerber's pensions.

<u>Administrative Deference</u>

WCERS first argues that the Court does not have jurisdiction over administrative actions such as WCERS' decision to discontinue Mr. Kerber's pension. It cites *VanZandt v. State Employees' Retirement System*, 266 Mich. App. 579 (Mich. Ct. App. 2005), which holds that "[i]f there is sufficient evidence, the circuit court may not substitute its judgment for that of the agency, even if the court might have reached a different result." *Id*. at 583. Indeed, Michigan law calls for administrative agencies to be accorded judicial deference, not total immunity. *Dignan v. Mich. Pub. Sch. Emples. Ret. Bd*., 253 Mich. App. 571, 576; 659 N.W.2d 629 (Mich. Ct. App. 2002) ("Courts should accord due deference to administrative expertise and not invade administrative fact finding by displacing an agency's choice between two reasonably differing views."). The federal law standard is the same: "In a judicial review of other administrative agency decisions…courts apply the highly deferential 'substantial evidence' standard." *Somberg v. Utica Cmty. Schs*., 908 F.3d 162 (6th Cir. 2018).

As deferential as the substantial evidence standard is, however, the Court still must conduct a review of whether "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" is present in the administrative record. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Such deference does WCERS no good, however, because it has failed to produce an administrative

record. The Court would not second-guess a well-reasoned articulation of the WCERS's resolution of Mr. Kerber's arguments and WCERS guidelines, but such reasoning is not present in this case precisely because Mr. Kerber was denied a meaningful opportunity to present his case, and because WCERS did not create a record to justify its decision. There can be no judicial deference without some record of the agency's reasoning.

Due Process

Whether or not Plaintiffs can bring a suit for a constitutional deprivation still depends on whether or not they can prove that WCERS's decisions violated Mr. Kerber's constitutional due process rights. Plaintiffs must show 1) that Mr. Kerber had a property interest protected by the due process clause of the fourteenth amendment, 2) that he was deprived of this protected interest, and 3) that Defendants did not afford him adequate procedural rights prior to the deprivation of this interest. *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2006). The Court decides whether or not Plaintiffs meet these burdens under FED. R. CIV. P. 12(b)(6), not 12(b)(1), because Defendant is arguing that Plaintiffs have failed to plead the elements of a viable federal due process claim. *See Lang v. City of Sterling Heights Employees Retirement System*, (E.D. Mich. Sept. 27, 2018, No. 17-13607) (evaluating the above three-stage analysis under Rule 12(b)(6)).

A pensioner has a constitutional due process right in his pension, if he has a "legitimate claim of entitlement" to that pension. *Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590 (6th Cir. 2016). WCERS argues that Plaintiffs lack a legitimate claim of entitlement over Mr. Kerber's pension, because he breached his severance contract. Plaintiffs argue that the contract language is at least ambiguous where it provides that, "the authority agrees to allow Employee to transfer his Plan Five defined contribution pension assets to Plan One, and elect Plan One as his retirement plan." (Dkt. 39-1).

The contractual language is clear on its face. Mr. Kerber had the option of transferring his Plan Five defined contribution assets to Plan One and collecting a pension under Plan One. He did not transfer those assets, and so he has no legitimate entitlement, under the severance contract, to a pension from those defined contribution assets that he withdrew from the fund. That omission did nothing to abrogate Mr. Kerber's legitimate claim of entitlement over his defined benefit assets, however, which he paid into the fund. If WCERS only stopped paying the portion of Mr. Kerber's pension traceable to the defined contribution assets he withdrew from his Prudential account, Mr. Kerber would not have a due process cause of action. But WCERS went further and cut off his entire pension, even those funds traceable to his defined benefits assets, which were properly transferred to Plan One pursuant to the severance agreement.

There is no doubt that just as an employee has a due process property interest in his salary, so too does a pensioner have such an interest in his pension. "Property interests are not created by the Constitution, but are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S, 564, 577 (1972). Such a property interest may be created by a contract, such as Mr. Kerber's severance agreement. *See Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000). Employment contracts have long created constitutionally protected property interests. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985). Pension agreements also compensate workers for their labor, and they are often just as critical, if not more, to their livelihood.

As Michigan's Constitution provides, "The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Mich. Const. Art. IX § 24. This language, unequivocally prohibiting the diminution of pension benefits, is far stronger than the "wholly permissive" language of the Reciprocal Retirement Act that the *Lang* court found provided too much discretion to create a due process property interest. *Lang v. City of Sterling Heights Employees Retirement System*, No. 17-13607 * 15 (E.D. Mich. Sept. 27, 2018). As the Michigan

Supreme Court explained, "Stated plainly, article 9, § 24 creates an undiminishable, unimpairable contractual obligation with regard to accrued financial benefits of retirement income." *In Re Request for Advisory Opinion Regarding Constitutionality* of 2011 PA 38, 490 Mich. 295 (Mich. 2011). Even if Plaintiffs lacked a due process property interest stemming from Mr. Kerber's severance agreement, they would still have an interest grounded in state law.

WCERS assumes that it has the absolute right to offset pension benefits it paid in error with pension benefits it owes legitimately. To that end, it has sought to pay back the portion of the Plan One benefits that were derived from Mr. Kerber's defined contribution funds—which it paid mistakenly for six years—with the portion of the Plan One benefits that were derived from his properly transferred defined benefit assets. Whether, or how, it executes this offset is a matter on which Plaintiffs have a right to be heard "in a meaningful time and in a meaningful manner." *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). Having determined that Plaintiff was deprived of a constitutionally protected due process interest, the Court's final inquiry is whether he was afforded adequate procedural rights prior to the deprivation. "Before a person is deprived of a protected interest, he must be afforded opportunity for some kind of hearing, except for ordinary circumstances where some valid governmental interest is at stake that justifies postponing the hearing until after

the event." *Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 848 (1977).

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Matthews*, 424 U.S. 319 at 334. WCERS proffers the Supreme Court's holding in *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230 (1988) for the proposition that criminal proceedings are adequate to the Constitution's pre-deprivation requirements. That case involved a bank officer's suspension for misfeasance after a finding of misfeasance in criminal court. In a pension case, however, a pensioner can be criminally liable for defrauding the pension fund of some quantity of money, but still not automatically subject to the forfeiture of his whole pension. Moreover, *Mallen* took for granted that the employer had a legitimate reason to dispense with the bank officer's pre-deprivation hearing in order to protect the bank's depositors and public confidence in the institution. *Id.* at 231. No such extenuating circumstances militating against a pre-deprivation hearing are present in this case. There is thus no evidence that this is the type of case where post-deprivation review may be sufficient. *See Leary*, 228 F.3d at 742.

Even if it were, the January 30, 2017 post-deprivation hearing afforded in this case was entirely deficient. Mr. Kerber was not provided with a letter indicating he had a right to a post-deprivation hearing until October 13, 2016, over 14 months after his benefits were suspended. Moreover, his hearing was not on WCERS's

decision to suspend his benefits, but rather an appeal from "the denial of his request for his pension benefits to be reinstated." (Dkt. 22-2). It is unclear what effect this burden-shifting had on decision-makers, because they didn't announce the standard on which they would evaluate their previous decision.  According to the meeting's minutes, attorneys for Mr. Kerber made appearance at 9:25 A.M., along with attorneys for WCERS. (Dkt. 22-2; WCERS Ex. I). Both parties made arguments to the Commission, and four members of the five-member Board went into closed session at 10:01 a.m., and came out of closed session at 10:31 a.m. (Id.). Mr. Kerber's appeal was denied by a vote of 4-0-1. (Id.).

The Sixth Circuit has held that in the event of "an abbreviated pre-termination hearing, due process requires that a discharged employee's post-termination hearing be substantially more 'meaningful'" *Carter v. W. Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270 273 (6th Cir. 1985). The January 30, 2017 hearing did not carry that burden. The WCERS's reasoning is entirely off the record, along with the parties' arguments. Though Plaintiffs were permitted to submit 600 pages of supporting documentation, there is no indication that the Committee took those documents under advisement in its decision. Moreover, witnesses were not called, despite that where a decision-maker "must choose between competing narratives to resolve a case," cross examination of witnesses may be warranted. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

Plaintiffs have thus adequately pled a deprivation, without due process, of their constitutionally protected property interest in Mr. Kerber's defined benefit pension. For WCERS to avail itself of judicial deference, it must conduct a fair hearing and produce a record justifying how it recalculates pension benefits to offset accidental overpayments, taking into account, if appropriate, the parties' levels of fault as determined by a full and fair analysis of the facts.

## II. Wayne County Prosecutor's Office's (WCPO's) Motion to Dismiss

Plaintiffs argue that the Wayne County Prosecutor, Kim Worthy, and several of her employees, violated Mr. Kerber's constitutional rights by arresting and prosecuting him without probable cause, in violation of state and federal law.

Prosecutorial Immunity

Defendants Donaldson and Worthy, as prosecutors, "enjoy[] absolute immunity from § 1983 suits for damages when [they] act[] within the scope of [their] prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). They also enjoy absolute immunity from common law torts they commit in the course of their official duties. *Cheolas v. City of Harper Woods*, 2009 U.S. Dist. LEXIS 11135 *28 (E.D. Mich. Feb. 13, 2009) (collecting cases). Such immunity extends not only to issuing arrest warrants and bringing charges, but also to speaking publicly about pending cases. The Wayne County Prosecutor's statements to the press regarding cases of public interest are part of her official duties, and so she will be immune from

defamation claims arising therefrom. *See Payton v. Wayne County*, 357 N.W.2d 700, 704 (Mich. Ct. App. 1984); *see also Rohl v. Worthy*, 2014 Mich. App. LEXIS 638 (Mich. Ct. App. 2014).

Detective Domek, however, is entitled only to federal qualified immunity or Michigan *Odom* immunity.

<u>False Arrest</u>

Mr. Kerber was arrested pursuant to a facially valid warrant. "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false imprisonment." *Voyticky v. Vill of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). Similarly, Michigan common law's tort of false arrest is foreclosed where the arrest is accomplished by a validly facial warrant. *Tomita v. Tucker*, 18 Mich. App 559 (Mich. Ct. App. 1969). An arrest warrant will not serve as a complete defense, however, when "a defendant intentionally mislead or intentionally omitted information at a probable cause hearing for an arrest or a search warrant[,] provided that the misleading or omi[tted] information is critical to the finding of probable cause. *Voyticky*, 412 F.3d at 677 n. 4 (citing *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998); *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)). Plaintiffs argue that Detective Domek was motivated by a desire to prove corruption within the County pension scheme, at all costs, and

omitted from his investigative report the crucial fact that the money that Mr. Kerber withdrew from his Prudential account was his own property.

These allegations fail to establish either § 1983 or common law false arrest. Det. Domek is not expected to accurately opine in his warrant affidavits on legal determinations of title and possession. In fact, he did not offer an opinion on whether Mr. Kerber's conduct was larceny; he only relayed what he learned from witnesses. (Dkt. 24-6). Plaintiff has identified no material statement by any of those witnesses that was factually untrue. The witnesses stated that the failure of WCERS to transfer the funds out of Mr. Kerber's Prudential Fund was the fault of one of its employees, and that the funds were in Mr. Kerber's account when he withdrew them. (Id.). The prosecuting attorneys, a district court, and a circuit court, were all adjudged to have been mistaken about whether Mr. Kerber's conduct was criminal. These were legal mistakes, however, not factual mistakes derived from Det. Domek's report.

Malicious Prosecution

Malicious prosecution is a tort available against those who "made, influenced, or participated in the decision to prosecute." According to Michigan law, such a decision can only be made by a prosecutor. *Moldowan v. City of Warren*, 578 F.3d 351, 400 (6th Cir. 2009). An officer's "participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake." *Johnson v. Mosely*, 790 F.3d 649, 655 (6th Cir. 2015). As with

false arrest, though a judicial determination of probable cause will generally shield an officer from charges of malicious prosecution, he cannot rely on such a determination where it was premised by the officer's own material misrepresentations to the court. *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989).

Conversely, "an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." *Sykes v. Anderson*, 625 F.3d 294, 314 (6th Cir. 2010). Michigan law provides the same. "It is well-settled that one who makes a full and fair disclosure to the prosecutor is not subject to an action for malicious prosecution." *Payton,* 536 N.W.2d at 242; *see also Matthews v. Blue Cross & Blue Shield of Michigan*, 572 N.W.2d 603, 609-10 (Mich. 1998) (holding that malicious prosecution requires that "the action was undertaken with malice or a purpose in instituting a criminal claim other than bringing the offender to justice"). As discussed above, Det. Domek made a full factual disclosure to the prosecutor, and he cannot be held liable for refusing to insert legal conclusions that seem clear after two reversals by the Michigan Court of Appeals. Because Plaintiffs have not pled the existence of any materially false or dishonest facts in Det. Domek's investigative report, they do have a cause of action for federal or state law malicious prosecution.

Intentional Infliction of Emotional Distress

The elements of the Michigan common law tort of Intentional Infliction of Emotional Distress ("IIED") are 1) extreme or outrageous conduct, 2) intent or recklessness, 3) causation, and 4) severe emotional distress. *Linebaugh v. Sheraton Michigan Corp*, 198 Mich. App. 335 (1993). A law enforcement officer cannot be liable for an IIED "for insisting on his legal right in a permissible way, though he might have been well aware that such insistence was certain to cause emotional distress." *Cebulski v. Belleville*, 156 Mich. App. 190 (Mich. Ct. App. 1986). Absent some evidence of malice or deceit, Det. Domek's investigative report cannot be the basis for an IIED claim.

WCPO's Alleged Influence over WCERS

Plaintiff has not pled any plausible grounds for holding any WCPO Defendants liable for WCERS's actions. Neither APA Donaldson nor Det. Domek has any authority to influence WCERS's pension decisions. Plaintiff pleads that on July 7, 2015, Det. Domek emailed Kelly Tapper, "Donaldson is of the opinion that if you want to act, go ahead and don't wait for the investigation to be finished." (Am. Compl. ¶ 50). There is no plausible way to read this as an order, or as legal advice, or anything but one county agency making clear to another that it is not interfering in its business. WCPO will not be held liable for its complaining witness' actions.

42 U.S.C. § 1983 provides the Court with jurisdiction over Plaintiffs' case against WCERS. Plaintiffs have adequately pled that WCERS deprived Mr. Kerber, without due process, of his constitutionally protected property interest in his defined benefit pension assets (derived from the $475,000 transferred to Plan One upon his retirement). The Court finds this case ill-suited for a preliminary injunction, however, as Plaintiffs would not be irreparably harmed by waiting until the resolution of the case for monetary relief.

Plaintiffs have not pled facts sufficient to make out a case against WCPO. Neither Det. Domek's email to Kelly Tapper, nor his investigative report, exposes him to liability. The Wayne County prosecutors who brought charges against Mr. Kerber are immune from monetary suits that stem from those charges.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for a Preliminary Injunction [6] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Wayne County Prosecutor's Office's Motion to Dismiss [24] is **GRANTED**. Defendants WCPO, Donaldson, Domek and Worthy are all dismissed from this suit.

**IT IS FURTHER ORDERED** that Defendant Kelly Tapper's Motion to Dismiss [28] and Defendant Wayne County Employees Retirement System's Motion to Dismiss [22] are **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiffs' Emergency Motion to Stay Proceedings pending a decision by the Michigan Supreme Court [29] is **DENIED AS MOOT**.

**SO ORDERED**.


<u>s/Arthur J. Tarnow</u>
Arthur J. Tarnow
Dated: March 26, 2019           Senior United States District Judge