UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL KERBER AND SHEILA KERBER,<br><br>        Plaintiffs,<br>v.<br><br>WAYNE COUNTY EMPLOYEES RETIREMENT SYSTEM, ET AL.,<br><br>        Defendants.<br>_____/ | Case No. 18-12049<br><br>SENIOR U.S. DISTRICT JUDGE<br>ARTHUR J. TARNOW<br><br>U.S. MAGISTRATE JUDGE<br>R. STEVEN WHALEN |

**ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION [52]**

Plaintiffs brought this suit under 42 U.S.C. § 1983 and Michigan state law to restore Daniel Kerber's pension benefits. They seek compensation for the decisions by the Wayne County Employees Retirement System ("WCERS") to cut off his pension, and the decision by the Wayne County Prosecutor's Office's ("WCPO") to prosecute him for his partial withdrawal of his pension funds. On March 26, 2019, the Court denied their motion for a preliminary injunction, granted the WCPO defendants' motion to dismiss in its entirety, and granted in part and denied in part the WCERS defendants' motion to dismiss. [Dkt. # 50].

**LEGAL STANDARD**

Plaintiffs move the Court to reconsider its March 26 Order. The Local Rules for the Eastern District of Michigan provide as follows.

1

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

L.R. 7.1(h)(3).

"A palpable defect is a defect which is obvious, clear, unmistakable, manifest or plain." *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001) (internal citations and quotations omitted).

## ANALYSIS

Plaintiffs argue that the Court's reasoning was plagued with several palpable defects. First, they argue that a preliminary injunction is warranted. They contend that the Court misevaluated the irreparable harm prong of the preliminary injunction analysis and misconstrued Mr. Kerber's severance agreement. Second, they argue that the WCPO Defendants should not have been dismissed. They focus on evidence that WCPO defendants were sufficiently involved in the decision to terminate Mr. Kerber's pension benefits, and that Defendant Kim Worthy does not have absolute immunity for her statements to the press. For the reasons below, the motion will be denied in its entirety.

I. **Preliminary Injunction**

   a. Irreparable Harm

A plaintiff seeking a preliminary injunction must demonstrate "that he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs oppose the Court's holding that Mr. Kerber cannot establish a likelihood of irreparable harm for a delay in his "purely monetary" relief. This holding was guided by precedent that "income wrongly withheld may be recovered through monetary damages in the form of back pay." (Dkt. 50 pg. 8-9 (citing *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 579, (6th Cir. 2002)). *Overstreet* is binding, whereas *Golden v. Kelsey-Hayes Co.*, 845 F.Supp. 410 (E.D. Mich. 1994) (which Plaintiffs did not cite in their original motion) is only persuasive. Moreover, the two cases do not even reach contradictory holdings. A pensioner could establish a likelihood of irreparable harm from the loss of his pension if the effects of his financial shortfall are not purely monetary. For instance, losing one's house or access to medical care would clearly constitute irreparable harm. Plaintiffs, however, do not allege they are at risk of such harms. If they prevail, they can be repaid with interest.

    b. The Severance Agreement

The Court found that Plaintiffs adequately pled due process rights in Mr. Kerber's defined benefit pension benefits, but not in his defined contribution pension benefits. To the extent that such rights derive from the severance agreement between Mr. Kerber and his former employer, Mr. Kerber only has rights in the pension that he paid for.

> Mr. Kerber had the option of transferring his Plan Five defined contribution assets to Plan One and collecting a pension under Plan One. He did not transfer those assets, and so he has no legitimate entitlement, under the severance contract, to a pension from those defined contribution assets that he withdrew from the fund. That omission did nothing to abrogate Mr. Kerber's legitimate claim of entitlement over his defined benefit assets, however, which he paid into the fund.

(Dkt. 50, pg. 13).

Plaintiffs argue that such a holding misconstrues the contract. Plaintiffs continue to argue, this time with reference to the contract's severability provision, that no condition precedent for performance is created by the promise that "the authority agrees to allow Employee to transfer his Plan Five defined contribution pension assets to Plan One, and elect Plan One as his retirement plan." (Dkt. 39-1). The severance provision permits the modification or severance of unenforceable contract provisions. It does not sever Mr. Kerber's pension benefits from the requirement that he pay for those benefits. Plaintiffs cite no case law for the proposition that impossibility of payment can sever a party's promise to pay from the performance for which it promises to pay. WCERS did not reform the contract; it sought restitution for a breach. Whether or not the means by which WCERS exacted this restitution—by seizing defined benefit assets—were constitutionally permissible remains to be seen. Nevertheless, Mr. Kerber's severance agreement does not provide him with a constitutional property interest in performance for which he did not fulfill a condition precedent (i.e.: payment).

## II. WCPO Motion to Dismiss

### a. WCPO involvement in WCERS decision-making

Plaintiffs argue that the Court wrongfully granted WCPO's motion to dismiss, because WCPO had a role in WCERS' decision to cut off Mr. Kerber's pension. Plaintiffs now raise several additional points of contact between the two organizations that appeared in neither the complaint nor the response (APA Molly Kettler's presence at the January 30, 2017 retirement board meeting; WCPO answering WCERS' FOIA request; Mr. Donaldson's statement to Ms. Tapper to keep the matter confidential). New arguments cannot demonstrate a palpable defect in the Court's reasoning, and so are improper for a motion for reconsideration.

More to the point, none of the allegations of entanglement, taken as true, can establish WCPO liability. WCERS is empowered by M.C.L. Section 46.12a to administer Wayne County's pension fund. WCPO has no power to influence WCERS decisions. To the extent that a WCERS employee interpreted a WCPO employee's statement as a command over how to administer the fund, the WCERS employee was derelict in her duties. WCERS would bear the entire responsibility for such a mistake. Even considering the new arguments presented by Plaintiffs, the court cannot draw a reasonable inference connecting WCERS' actions statements by WCPO agents. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that defendant is liable for the misconduct alleged.").

Pleading an actual connection between the misconduct alleged and the defendant is especially important for suits brought under § 1983, where even supervisory liability for those with actual decision-making authority must be specifically pled. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ("We have long held that supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor."). No WCPO employee is a supervisor of any WCERS employee, but, even assuming that a WCPO employee directed the actions of WCERS, Plaintiffs would still have been required to plead how such advice constituted active unconstitutional behavior.

b. Prosecutorial Immunity for Statements to the Press

Count X of the Amended Complaint pled Common Law Defamation against Defendant Kim Worthy. Defendants moved to dismiss the Count on the grounds that Michigan Law provides absolute immunity for state prosecutors speaking to the press about ongoing cases. After Plaintiffs failed to respond to this argument in their response, the Court granted the motion to dismiss Count X. (Dkt. 50, pg. 18-19 (citing *Rohl v. Worthy*, 2014 Mich. App. LEXIS 638 (Mich. Ct. App. 2014); *Cheolas v. City of Harper Woods*, 2009 U.S. Dist. LEXIS 11135 *28 (E.D. Mich. Feb. 13, 2009); *Payton v. Wayne County*, 357 N.W.2d 700, 704 (Mich. Ct. App. 1984)).

Plaintiffs now move for reconsideration on the basis that absolute immunity is not a bar for federal defamation claims arising under §1983. *See Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). They are right about federal prosecutorial absolute immunity, but they will not be permitted to transform their common law defamation claim into a federal § 1983 cause of action. Indeed, there is no such thing as a § 1983 defamation. The statements at issue in *Buckley* were actionable not as normal common law defamation,[1] but as attempts to poison the public against Stephen Buckley and deprive him of a fair trial. *See Buckley v. Fitzsimmons*, 952 F.2d 965 (7th Cir. 1992). Because Plaintiffs never pled or argued a federal cause of action relating to Kim Worthy's allegedly defamatory statements, the Court's dismissal of Count X will not be disturbed.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Reconsideration [52] is **DENIED**.

**SO ORDERED**.

s/Arthur J. Tarnow<br>
Arthur J. Tarnow<br>
Senior United States District Judge

Dated: April 25, 2019

---

[1] The plaintiff in *Buckley* did bring a common law defamation count, but it was dismissed in a cursory fashion by the trial court and not raised again. The crux of the case in *Buckley* turned on the prosecutor's immunity for defamatory language which prejudiced criminal proceedings, not merely tarnished a defendant's good name.