UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL KERBER AND SHEILA KERBER,

              Plaintiffs,

v.

WAYNE COUNTY EMPLOYEE
RETIREMENT SYSTEM AND ROBERT
GRDEN

              Defendants.

_____/

Case No. 18-12049

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR AN EXTENSION [77]; DENYING PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT [80]; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [64]**

      Plaintiff Daniel Kerber was the Chief Operating Officer for the Wayne County Airport Authority. He retired in 2009 and began drawing a pension from the Wayne County Employees Retirement System ("WCERS"). In 2011 he withdrew over $340,000 of the defined contribution funds that WCERS believed was meant to fund his pension. After an investigation, WCERS suspended Mr. Kerber's pension while Wayne County brought criminal charges against him.

      Following two successive appeals of the Circuit Court's ruling not to quash the indictment, the Court of Appeals ruled that the prosecution had not met the elements of larceny by trick or larceny by conversion. The case was dismissed, and

Mr. Kerber brought this fourteen-count suit against Wayne Count's Retirement System, Prosecutor's Office, and Airport Authority, to reinstate his pension and recover compensatory and punitive damages incurred defending his case.

Discovery has been completed. Defendants now move for Summary Judgment and Plaintiffs move to amend their complaint.

## FACTUAL BACKGROUND

The Wayne County Employees Retirement System exists in accordance with the Wayne County Retirement Ordinance. The Retirement Commission administers and manages the Retirement System and is funded out of the investment earnings of the Retirement system. (ECF No. 64-2, PageId.1990).

During his long career with Wayne County, Plaintiff Daniel Kerber switched between three retirement Plans, Plan One, Four and Five. Plan One entailed only a defined benefit component, whereas Plan Five consisted of a defined benefit component and a defined contribution component. Plaintiff was in Plan Five at the time of his retirement in 2009. As part of Mr. Kerber's severance agreement, he was permitted to re-enter and retire from Plan One instead of Plan Five. (ECF No. 39-1).

As part of this transfer, $475,000 of defined benefit assets were transferred by WCERS from Plaintiff's Plan Five account to his Plan One account. On July 24, 2009, the Chief Executive Officer of Wayne County Airport Authority, Lester Robinson, sent a letter to the director of WCERS, Ronald Yee, "allowing" Mr.

Kerber to transfer his Plan Five defined contribution assets to Plan One, and to elect to retire under Plan One. (ECF No. 39-2).

Upon his retirement on September 1, 2009, Mr. Kerber began receiving monthly pension payments of $11,337.48. This was considerably higher than the $6,056.38 that he would have received monthly had he remained in Plan Five. Nevertheless, $270,000 remained in Plaintiff's Plan Five defined-contribution account. Plaintiff continued to receive account statements on his Plan Five defined contribution account up until April 2011. One such statement indicated that $331,493.77 remained in the account on April 1, 2011. (ECF No. 39-4).

In April 2011 Plaintiff contacted Prudential and asked for his defined-contribution funds to be distributed to him. (ECF No. 39-4).  On May 2, 2011 Prudential received approval from WCERS and issued a check in the amount of 277,431.40 ($340,166.01 minus taxes). (*Id.*).

In January 2015 WCERS Director Defendant Robert Grden directed WCERS Defendant Kelly Tapper to conduct a review of Plaintiff's file. (ECF No. 76-2, PageId.2388-2390; Robert Grden Dep. pg. 20-22). WCERS then found that Kerber had withdrawn his defined contribution funds. (*Id.*). On July 22, 2015, WCERS informed Kerber of its intention to suspend his pension pending an investigation. (*Id.* at PageId.2394). The letter to Kerber, signed by Kelly Tapper with Defendant Grden cc'd, stated that the Plan One retirement plan was now invalid, because

Kerber had never paid into the plan pursuant to the severance agreement. (ECF No. 64-2, PageId.2009).

Kerber was subsequently charged with larceny on two separate occasions. The Michigan Court of Appeals dismissed both sets of charges in two separate opinions. *People v. Kerber*, 2017 Mich. App. Lexis 710 (Mich. Ct. App. Apr. 27, 2017); *People v. Kerber*, 2018 Mich. App. LEXIS 2347 (Mich. Ct. App. May 15, 2018) (*see* ECF No. 50, PageId.1687-1689 for greater detail on these two cases).

Following the resolution of his criminal case, the Retirement Commission, at its October 29, 2018 meeting, voted to partially restore Kerber's Plan Five pension. A resolution passed 6-0-1 that Kerber should be paid $6,056.38 per month in Plan Five benefits "(minus any reductions necessary to recover the amount he was overpaid)" instead of his original $11,337.48 per month in Plan One benefits. (ECF No. 79-2, PageId.2557-2559). On November 26, 2018, Defendants, through counsel send Plaintiff, through counsel, a letter detailing his options, given the Commission's resolution. (ECF No. 64-2, PageId.2076-2079). The letter noted that the commissioners decided that Kerber had to repay the money he owed.

> *RESOLVED, that the Wayne County Employees' Retirement Commission Directs staff to use the assets held in trust during the suspension of Mr. Kerber's defined benefit pension to offset the amount Mr. Kerber owes the Retirement System, with interest, and be it further*
> *RESOLVED, that the Wayne County Employees' Retirement Commission Directs staff to recover the remaining amount Mr. Kerber has been overpaid from the Retirement System, with interest, from either a lump sum payment from Mr. Kerber or pursuant to a repayment plan…"*

WCERS had determined that $334,322.98 was still owed by Kerber, "taking into account investment earnings that could have been realized on those overpayments." (ECF No.64-2, PageId.2066). The overpayment was based on all the payments of $11,337.48 that should have been $6,056.38. The investment earnings were calculated based on what WCERS actually earned. (*Id.*). A ten-year recovery plan would have WCERS take out $3,873.85 per month from Kerber's Plan Five benefits and leave him $2,182.53 per month. Two other recovery options were presented—lifetime payment and lump sum. After Kerber's attorneys did not respond to the letter, WCERS put Kerber on a ten-year repayment plan.

## PROCEDURAL BACKGROUND

Daniel and Sheila Kerber brought this suit for declaratory judgment, injunctive relief, and damages on June 29, 2018. (ECF No. 1). Plaintiffs amended their complaint and moved for a preliminary injunction on August 2, 2018. (ECF Nos. 5, 6). The Wayne County Prosecutor, the Wayne County Airport Authority, WCERS, Anthony Domek, Kelly Tapper, and Robert Grden were all named as Defendants. All the defendants filed motions to dismiss. (ECF Nos. 22, 24, 28, 30).

The Court held a hearing on these motions on February 5, 2019. (ECF No. 48). On February 12, 2019, it granted the Wayne County Airport Authority's Motion to Dismiss. (ECF No. 47). On March 26, 2019, it denied Plaintiff's Motion for a preliminary injunction, granted the Wayne County Prosecutor's Motion to Dismiss,

and granted in part and denied in part WCERS's Motion to Dismiss. (ECF No. 50). The Court denied Plaintiff's Motion for Reconsideration [52] on April 25, 2019. (ECF No. 55). Defendant Kelly Tapper was dismissed by stipulation [57] on May 29, 2019, and the case proceeded to discovery as against WCERS and Robert Grden. (ECF No. 58).

The June 10, 2019 scheduling order provided for a discovery cut-off of October 10, 2019 and a dispositive motion cut-off of November 12, 2019. On September 9, 2019, Plaintiffs moved to extend discovery 60 days. (ECF No. 61). This motion was referred to Magistrate Judge R. Steven Whalen, who, after a hearing, granted Plaintiffs' motion to extend and granted in part and denied in part their motion to compel. (ECF No. 73). In the meantime, WCERS and Grden filed their Motion for Summary Judgment on September 20, 2019. (ECF No. 64). Plaintiffs moved to extend their time to file a response until after the Magistrate Judge ruled on their motion to compel more discovery and extend the discovery cut-off. (ECF No. 68).

On October 25, 2019, the Court granted the motion to extend time, reasoning that it would make no sense to require Plaintiffs to brief a response to summary judgment before discovery had closed. (ECF No. 71). The Magistrate Judge extended the discovery cut-off until February 3, 2020. (ECF No. 73). Plaintiffs' response to the motion for summary judgment was therefore due on February 24,

2020. Plaintiffs, however, did not file their response until February 25, 2020. (ECF No. 76). They filed a concurrent motion for an extension of time, which Defendants opposed. (ECF Nos. 77, 78).

On March 29, 2020, Plaintiffs filed a Motion to Amend their Complaint. (ECF No. 80). Defendants responded in opposition on April 17, 2020, which, incidentally, was five days late. *See* Local Rule 7.1(e)(2)(B) (allowing non-movant 14 days to respond to a non-dispositive motion).

The Court held a hearing on all three motions on June 4, 2020 and took all three motions under advisement.

## I.      Plaintiff's Motion to Extend [77] their Response Deadline by One Day

### STANDARD OF REVIEW

Rule 16 of the Federal Rules of Civil Procedure permits the Court to modify a scheduling order "only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Good cause is measured by the movant's "diligence in attempting to meet the case management order's requirements." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). Another key factor is whether the modification will prejudice the opposing party. *Id.*

### ANALYSIS

Plaintiffs will be granted their one-day extension. Defendants' argument that Plaintiffs already had four months to file a response rings hollow because, as the

Court already observed in its October 25, 2019 ruling, Defendants knew when they filed their motion for summary judgment—two months before the dispositive motion cut-off date—that Plaintiffs were seeking more time for discovery. (ECF No. 71). Defendants' decision to file their motion two months before the close of discovery gave Plaintiffs far more extra time to file their response than the one-day extension requested by Plaintiff. No prejudice arises from the delay, and Plaintiffs' motion for an extension is therefore well taken.

## II.    Plaintiff's Motion to Amend the Complaint [80]

### LEGAL STANDARD

Rule 15 of the Federal Rules of Civil Procedure permits a district court to grant a Plaintiff leave to amend his complaint "when justice so requires." FED. R. CIV. P. 15(a)(2). In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). Because a proposed amendment is futile if it could not withstand a motion to dismiss, a motion to amend will not be granted if the opposing part demonstrates futility. *Thiokol Corp. v. Department of Treasury, State of Michigan Revenue Division*, 987 F.2d 376 (6th Cir. 1993).

## ANALYSIS

On March 29, 2020, a month after they responded to Defendants' Motion for Summary Judgment, Plaintiffs filed a Motion to Amend their Complaint to add a count of First Amendment retaliation against WCERS for their October 2018 decision to reinstate a much-reduced pension for Kerber.

Plaintiffs moved to amend their complain after the close of extended discovery and the full briefing of Defendants' Motion for Summary Judgment. The Sixth Circuit has held that undue delay, combined with "at least some significant showing of prejudice," can warrant the denial of a motion to amend the complaint. *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). Prejudice will arise where Defendants are forced to defend, after the close of discovery, new claims only tangentially-related to the original claims. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) ("Allowing amendment at this late stage in the litigation would create significant prejudice to the defendants in having to reopen discovery and prepare a defense for a claim quite different from the sex-based retaliation claim that was before the court.").

Defendants would certainly be prejudiced if they were required to defend the suit on first amendment retaliation grounds after litigating for two years—completing a motion to dismiss, discovery, and a motion for summary judgment—on due process grounds. Plaintiffs have not made any showing why they could not

have moved to amend their complaint right after Kerber's pension was restarted (the alleged retaliatory action) on November 26, 2018. The seventeen month delay is inexplicable, in addition to prejudicial, and can only be considered an undue delay within the meaning of the Sixth Circuit's interpretation of Rule 15. The Court will deny Plaintiffs' motion to amend on these grounds.

### III.   Defendants' Motion for Summary Judgment

#### LEGAL STANDARD

Defendants bring their motion under FED. R. CIV. P. 56. When evaluating Defendants' motion for summary judgment the Court must consider the evidence on the record, drawing all inferences in Plaintiff's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The question on summary judgment is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party "may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations…[but instead] must present affirmative evidence." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004) (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)).

## ANALYSIS

Plaintiffs allege that they were deprived of their constitutional rights to due process when Kerber's pension was discontinued. Defendants cite *VanZandt v. State Employees' Retirement System*, 266 Mich. App. 579 (Mich. Ct. App. 2005) for the proposition that judicial review of WCERS are limited in scope. The doctrine of judicial deference has no place in this case, however. The Court has no jurisdiction to hear a direct appeal from a Michigan state agency decision. Rather, the Court's constitutional inquiry is whether WCERS's summary denial of Kerber's pension benefits violated the fifth and fourteenth amendment.

In order to survive summary judgment, Plaintiffs must show that there is at least a material dispute of fact as to each of the following elements:1) that Kerber had a property interest protected by the due process clause of the fourteenth amendment, 2) that he was deprived of this protected interest, and 3) that Defendants did not afford him adequate procedural rights prior to the deprivation of this interest.

*Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2006).

1. Property Interest

As to the first element, "[a] cognizable property interest arises when plaintiffs have a legitimate claim of entitlement (or more than a unilateral expectation) to a particular benefit." *Paytel v. City of Detroit*, 287 F.3d 527, 539 (6th Cir. 2002). The Court has previously held that Kerber did not have a constitutionally protected property interest in his defined contribution Plan One pension benefits, because he never satisfied the condition precedent in the severance agreement: payment of those funds. (ECF No. 50, pg. 13; ECF No. 55, pg. 4). Kerber does, however, have a constitutionally protected property interest in his Plan Five defined asset benefits, because he funded those benefits. (*See* ECF No. 50, PageId.1696-1697 for the reasoning of this holding).

2. Deprivation

As to the second element, WCERS deprived Kerber of his constitutionally protected property interest in his monthly pension payment. By deciding in July of 2015 to hold Kerber's pension in trust, and then to use those trust funds to pay the debt arising from overpayment, WCERS impaired Kerber's reliance interest in his pension. (ECF No. 79-2, PageId.2557-2559). "[A] person's means of livelihood is one of the most significant that an individual can possess." *Ramsey v. Bd. of Educ. of Whitley Cty., Ky.*, 844 F.2d 1268, 1273 (6th Cir. 1988) (*citing Cleveland Bd. of*

*Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). There is no principled reason to treat a reliance on one's pension as less valuable than a reliance on one's career, and indeed the loss of one's pension is tantamount to "the loss of economic autonomy their public careers were expected to provide." *Mayborg v. City of St. Bernard*, No. 1:04-CV-00249, 2006 WL 3803393, at *12 (S.D. Ohio Nov. 22, 2006).

WCERS is correct that it is required by ordinance to correct overpayments. Wayne County Ordinance Title VI § 141-41. https://library.municode.com/mi/wayne_county/codes/code_of_ordinances?nodeId =TIVIFI_CH141RE_S141-41COER accessed on June 26, 2020. It has the right to do so by "reducing the amount of future payments so that the actuarial present value of actual payments to the recipient is equal to the actuarial present value of payments to which the recipient is correctly entitled." *Id*. WCERS's exercise of that right may implicate constitutional due process requirement, however, when its reduction of overpayments entails a total suspension of a retired individual's pension. WCERS has argued that Kerber never suffered a constitutional deprivation, because the $6,056.38 per month in Plan Five benefits were entirely credited against Kerber's debt from August 2015 until December 2018 and then credited in part against that debt since January 1, 2019. This argument is specious, however, for the unilateral seizure of property to pay a disputed debt is nothing if not a deprivation of one's constitutional interest in that property.

3. Hearing

Because they were deprived of their constitutionally protected property interest in their pension, Plaintiffs had a right to be heard "in a meaningful time and in a meaningful manner." *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). Kerber received a notice on July 22, 2015 that his pension would be suspended pending an investigation. It was not reinstituted until the WCERS Board met on October 29, 2018 and decided to reinstate Kerber's pension as of January 1, 2019. The Court finds that although Plaintiffs were provided with adequate post-suspension procedural rights, they were provided with an inadequate pre-suspension right to be heard.

Pre-suspension hearing

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Matthews*, 424 U.S. 319 at 334. "The United States Supreme Court has consistently held that some form of a hearing is required prior to an individual being finally deprived of a property interest." *Chernin v. Welchans,* 844 F.2d 322, 325 (6th Cir.1988) (citing *Wolff v. McDonnell,* 418 U.S. 539, 557–58 (1974)).

The *Matthews* Court articulated three factors to balance in determining what process is due in any particular case: (1) the private interest at stake; (2) the risk of an erroneous deprivation and the value of any additional or substitute procedural

safeguards; and (3) the Government's interest, including the function in question and any fiscal or administrative burdens that the proposed additional procedures would impose. *Matthews*, 424 U.S. at 335.

Defendants cite a number of Supreme Court cases for the proposition that a post-deprivation hearing satisfies due process. The first of these notes that "[w]e tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). The Court held that while a post-deprivation hearing may suffice for kitchen appliances and other moveable (abscondable) goods, a pre-deprivation hearing is required for property. The second notes that "[i]n some circumstances, however, the Court has held that a statutory provision for a post-deprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). "[W]here the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures ... are sufficiently reliable to minimize the risk of erroneous determination," a prior hearing may not be required. *Id.* (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978).

In the third case, the Supreme Court allowed New York state to suspend a horse-trainer's license without a pre-suspension hearing, but only if there were

probable cause that a horse was drugged. The Court noted the State's interests in protecting the integrity of horse racing. *Barry v. Barchi*, 443 U.S. 55, 59 (1979).

In a case involving an Illinois statutory scheme that entailed automatic suspension of driver's licenses for repeated moving violations, the Supreme Court weighed the driver's private interest in maintaining a driver's license against the public's interest in the safety of its roads. *Dixon v. Love*, 431 U.S. 105, 114 (1977). Although the Court upheld the law, it noted that the precise rules afforded by the statute removed the role of discretion in the decision and so cancelled out the need for a pre-deprivation hearing. *Id*.

The final case, *N. Am. Cold Storage Co. v. City of Chicago*, 211 U.S. 306, 316 (1908), is from 1908 and therefore unhelpful in light of the substantial intervening precedent, especially *Matthews v. Eldridge* and *Goldberg v. Kelly*.

Given this caselaw, it appears that pre-deprivation hearings are generally required when the state seeks to deprive an individual of a constitutionally protected property interest, but they may be dispensed with in certain circumstances. Those circumstances arise when public safety requires rapid action, when the discretion of the decision-maker is low, when verifiable proofs exist of misconduct, and when errors may be fairly corrected in a post-deprivation hearing. In the Sixth Circuit's words, "[a] prior hearing is not constitutionally required where there is a special need for very prompt action to secure an important public interest and where a government

official is responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in a particular instance." *Flatford v. City of Monroe*, 17 F.3d 162, 167 (6th Cir. 1994).

Though a pensioner can certainly recover his pension in a post-deprivation hearing, including a state mandamus action, the time required to do so can bankrupt a pensioner of modest means. A pension fund can cancel a monthly pension with minimal loss by scheduling a hearing within a matter of weeks. Overpayment can often be corrected by assessing the excess against remaining pension payments. Suspending a pension, whether to hold it in trust or to divert it to correcting an overpayment, therefore requires a pre-suspension hearing.

Sixth Circuit caselaw cited by Defendants is not persuasive. Defendants cite an unpublished case in which the Sixth Circuit held that a city was not liable for discontinuing various municipal employees' disability pensions following an adverse recommendation by a medical examiner. *See Kahles v. City of Cincinnati*, 704 F. App'x 501 (6th Cir. 2017). Though the *Kahles* Court does point to the existence of a state-law mandamus remedy as a factor militating against a finding of inadequate due process, the Court noted at the outset of its analysis that Plaintiff's appeal was limited to the lack of procedure to challenge the medical examiner's determinations that the plaintiffs no longer meet the municipal code's definition of employees eligible for disability retirement benefits. *Id*. at 505. The Sixth Circuit

ruled against the Plaintiffs on the grounds that the Plaintiffs had the opportunity to present whatever medical evidence they could muster to contradict the medical examiner's initial determination that they were "able to engage in a gainful occupation." *Id.* at 507. The Court noted that the timeline within which Plaintiffs could challenge the medical examiner's findings was "reasonable" and that they were given adequate notice of the audit. This contrasts with the nine-days-notice the Kerber received that their pension would be suspended without a hearing.

Indeed, the *Kahles* district court held that the deficiencies in the pre-termination hearing—which allowed Plaintiffs to produce medical evidence in their defense prior to the final administrative decision (and cessation of their benefits)—were compensated for by the defendants' robust post-termination hearing. *Kahles v. City of Cincinnati*, No. 1:13-CV-560, 2015 WL 5016505, at *2 (S.D. Ohio Aug. 25, 2015), *aff'd*, 704 F. App'x 501 (6th Cir. 2017). Indeed, courts have held that the adequacy of a pre-termination hearing for the termination of public employment should be measured in light of the adequacy of the post-termination hearing.

> The "root requirement" of due process of law is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis in original). "The pre-deprivation process need not always be elaborate, however; the amount of process required depends, in part, on the importance of the interests at stake." *Leary v. Daeschner*, 228 F.3d 729, 742-43 (6th Cir. 2000). "Moreover, the sufficiency of pre-deprivation procedures must be considered in conjunction with the options for post-deprivation review; if elaborate procedures for post-

deprivation review are in place, less elaborate pre-deprivation process may be required." *Id.*

*McCaw v. Charter Twp. of Waterford*, No. 15-CV-12069, 2016 WL 4191740, at *8 (E.D. Mich. Aug. 9, 2016), *aff'd*, 693 F. App'x 434 (6th Cir. 2017).

The Plaintiff in *McCaw*, who was forced into retirement, had the opportunity to address the decision-making board through counsel and in writing prior to his termination, even if he did not have the opportunity to appear in person before the board. Similarly, due process is met where a Plaintiff had "notice as to why he was being considered for medical retirement, clearly knew about the medical evidence the Board was relying upon, and was given the opportunity to present his side of the story." *Cremeans v. City of Roseville*, 861 F.2d 878, 884 (6th Cir. 1988).

Defendants also rely on an Ohio district court case for the proposition that the cessation of pension benefits does not require a pre-deprivation hearing. *See Mathews v. Ohio Pub. Employees Ret. Sys.*, 91 F. Supp. 3d 989 (S.D. Ohio 2015). *Matthews* involved disability payments that were revoked after Plaintiff returned to work. The court noted that "the risk of depriving someone of the means of his livelihood is lessened in a 'return to service' case, where disability benefits are terminated because the benefit recipient returned to work." *Id*. at 1000. The *Matthews* court also observed that Defendant had no discretion as to whether the benefits were discontinued because its governing statute did not provide the decision-maker with any discretion. *Id*. "[A] pre-termination hearing was not

required when there was no underlying factual dispute to be hashed out in the hearing." *Alvin v. Suzuki,* 227 F.3d 107, 121 (3d Cir.2000). Here, however, there appears to be an underlying factual dispute, namely whether Kerber defrauded the pension fund. At a bare minimum, WCERS had ample discretion to decide whether Kerber would be put on a repayment plan and what the contours of that plan would be.

Defendants also argue that Kerber did in fact receive a pre-deprivation hearing, in the form of his criminal indictment for larceny. As Plaintiffs observe, however, criminal charges against Kerber were not brought until after his pension was terminated. The Court also rejected this argument in its ruling on Defendant's motion to dismiss. (ECF No. 50, PageId.1698).

WCERS violated the due process clause of the Constitution when it suspended Kerber's pension prior to affording him some kind of hearing. Though the hearing need not have been elaborate in light of Kerber's access to post-suspension remedies, Kerber was owed at least a right to be heard before his pension was discontinued.

Post-Suspension Hearing

Kerber could have requested review as early as August 2015 under Section 141-33(c) of the Retirement Ordinance. Indeed, that provision allows for appeals to be filed from an adverse WCERS determinations within 45 days and requires a hearing within 60 days. For whatever reason, Plaintiffs waited until October of 2016

to contact WCERS, through counsel, to request reinstatement of the pension. WCERS notified Plaintiff of his right to appeal on October 13, 2016, and Plaintiff expressed his intent to appeal on November 23, 2016. A hearing was scheduled for the January 30, 2017 meeting, and Plaintiff's counsel submitted an appellate packet in excess of 600 pages on January 23, 2017. Plaintiff's appeal was heard, and WCERS thereafter went into closed session to consider the appeal. This hearing allowed Kerber to be heard in a meaningfully manner, and the Court therefore will not consider the adequacy of available state-law remedies.

### Damages

His right to a pre-suspension due process hearing having been infringed, Kerber is entitled to at least nominal damages. The Supreme Court has held that nominal damages are appropriate where the denial of due process did not cause the complained-of injury. *Carey v Piphus,* 435 U.S. 247 (1978). "Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed…the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Carey*, 435 U.S. at 266. "Mandatory nominal damages reinforce the notion that one has an absolute right to procedural due process, and society has an obligation to 'scrupulously observe[]' that right." *Contract Design Grp., Inc. v.*

*Wayne State Univ.*, No. 10-14702, 2014 WL 12661821, at *1 (E.D. Mich. June 25, 2014) (citing *Farrar v. Hobby*, 506 U.S. 103,112 (1992).

Defendants argue that Plaintiffs' damages are only nominal, because he cannot show that he would have received a better outcome had he been afforded a pre-deprivation hearing. Defendants bear the burden of showing that the evidence, taken in the light most favorable to Plaintiffs, could not support a reasonable jury's finding that Kerber would have continued to receive his pension had he been provided with a hearing. They can prove that the result for Plaintiffs would have been the same if the plaintiff was afforded due process by showing that the adverse action was "justified under the circumstances." *Franklin v. Aycock*, 795 F.2d 1253, 1264 (6th Cir. 1986); *see also Kendall v. Bd. of Ed. of Memphis City Sch.*, 627 F.2d 1, 6 (6th Cir. 1980) (overruled on other grounds) (holding a teacher "is not entitled to relief for the deprivation of her contract right if the [School] Board established that she would have been discharged even if a proper hearing had been held.").

Defendants carry this burden. Their internal audit of WCERS records reveals that Kerber's Plan One benefits were unwarranted. The audit found 1) the employer never undertook a study of the long term effects of the pension as required by MCL 38.1132, 2) WCERS was never provided with a copy of the severance agreement, and 3) no labor group had been offered a similar option to transfer into Plan One, as required by MCL 46.12a. (ECF No. 64-2, PageId.1999). Plaintiffs do not dispute

any of these deficiencies. The suspension of Kerber's pension was therefore justified under the circumstances.

Plaintiffs provide no evidence that the result of a pre-termination hearing would have been any different from the result of the post-termination hearing. There is no reason to question WCERS's reasoning that it would have followed Section 141-41 of Wayne County's Retirement Ordinance and reduced Plaintiff's pension to correct the overpayment. It may have decided to put Plaintiff on a payment plan, as it did in October of 2018, rather than suspend his pension altogether. Such a decision would not have helped Kerber financially, though, as he would still owe the same amount to the Retirement System. Only the timing of his payments would be altered. Plaintiffs are therefore not entitled to compensatory damages.

Plaintiffs can show that they are entitled to punitive damages by demonstrating malicious or reckless disregard of their constitutional rights. Courts have found that "a punitive damage award which responds to a finding of a constitutional breach may endure even though unaccompanied by an award of compensatory damages." *Campos-Orrego v. Rivera*, 175 F.3d 89, 97 (1st Cir. 1999). Punitive damages may be available in addition to nominal damages "to deter or punish malicious deprivations of rights." *Carey*, 435 U.S. at 266. The Supreme Court has held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive

or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Hill v. Marshall*, 962 F.2d 1209, 1217 (6th Cir. 1992) (adding gross negligence as a justification for punitive damages).

Defendants are entitled to summary judgment on Plaintiffs' suit for punitive damages too, however. There is no evidence on the record that WCERS acted with any worse *mens rea* than simple negligence as to Kerber's due process interest in his pension. Because punitive damages are a mechanism for punishing the defendant for 'willful or malicious conduct,' they may be granted "only on a showing of the requisite intent." *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015). Because their ultimate decision was justified, there are no grounds to charge that Defendants' corner-cutting means of reaching that decision without a hearing was malicious or intended to deprive Kerber of his constitutional rights. *See Holly v. City of Ecorse*, No. 05-74238, 2006 WL 3343743, at *3 (E.D. Mich. Nov. 17, 2006) (holding, after a bench trial, that the deprivation of procedural due process rights, absent compensatory damages, did not support punitive damages); *Irizarry v. Cleveland Pub. Library*, 727 F. Supp. 357, 365 (N.D. Ohio 1989) (declining, on a motion for summary judgment, to authorize punitive damages in addition to back-pay where an employer fired an employee without a hearing).

Though nominal damages are warranted, the evidence on the record, taken in the light most favorable to Plaintiff, cannot support a verdict for compensatory or punitive damages. Plaintiffs' damages therefore may not exceed one dollar. *Carey*, 435 U.S. at 267; *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n. 11 (1986) ("nominal damages, and not damages based on some undefinable "value" of infringed rights, are the appropriate means of "vindicating" rights whose deprivation has not caused actual, provable injury").

**Defendant Robert Grden's Entitlement to Michigan State Law Immunity**

Plaintiffs pursue several state law tort claims against Robert Grden, Executive Director of WCERS. Robert Grden reported Kerber's alleged fraud to the Wayne County Prosecutor's Office.

Michigan state officials are immune from tort liability from discretionary actions undertaken in good faith as part of their official duties. Defendants argue that Ordinance 2012-364, the Wayne County Fraud Ordinance, required Grden to report suspected fraud to the county prosecutor. (ECF No. 64-2, PageId.2130-2137). Plaintiffs respond by arguing that Kerber was not covered by the Fraud Ordinance because he was not a Wayne County Employee at the time. This is beside the point. Wayne County officials have a right to make reports of suspected criminal conduct affecting the financial integrity of their departments. This is true even where no explicit part of Grden's job description specifies reporting criminal conduct. Even if

it weren't, Michigan Governmental Tort Liability depends not on whether the officer is technically acting under the scope of his authority, but whether he "reasonably believes" he is acting under the scope of his authority. MCL 691.1407(2)(a).

Plaintiffs also argue that Governmental Tort Liability is not available for breach of contract disputes. Grden was not a signatory to any contract, however, and so this argument is unavailing. Next, Plaintiff cites case-law involving federal *Monell* liability to argue that a chief decision-maker can impute liability to a municipality. Plaintiff does not cite any evidence, however, that chief decision-makers are deprived of Michigan Governmental Immunity. Indeed, such immunity is established by statute. *See* MCL 691.1407. The statute has no exceptions or limitations for decisionmakers.

Robert Grden is therefore immune from Plaintiffs' state-law tort claims.

## CONCLUSION

Plaintiffs have a constitutional due process interest in Kerber's Plan Five defined benefit assets. WCERS was well within its rights to deprive Kerber of that pension interest to correct an overpayment, but it violated the due process clause when it chose to suspend his pension without a hearing prior to the suspension. Because WCERS's ultimate determination was justified and without malice, however, Plaintiff's damages cannot exceed one dollar.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [64] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for an Extension [77] is **GRANTED** and Plaintiffs' Motion to Amend their Complaint [80] is **DENIED**.

**SO ORDERED**.

<u>s/Arthur J. Tarnow</u>
Arthur J. Tarnow
Dated: July 20, 2020                     Senior United States District Judge